# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:01CV83-2-V
### (5:98CR164-11-V)

| | | |
|---|---|---|
| DANETTE L. MAYFIELD, | ) | |
|     Petitioner, | ) | |
| | ) | |
|       v. | ) | **O R D E R** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |
| | ) | |

**THIS MATTER** is before this Court upon petitioner's Motion to Vacate, Set Aside, or Correct under 28 U.S.C. §2255, filed May 15, 2001; on the "United States' Response To Petition And Motion To Dismiss," filed August 1, 2001; and on the petitioner's "Motion For Summary Judgment," filed November 9, 2001. For the reasons stated herein, the government's Motion for Dismissal, construed as a motion for summary judgment, will be <u>granted</u>; the petitioner's Motion for Summary Judgment will be <u>denied</u>; and the petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on July 6, 1998, a Bill of Indictment was filed, charging the petitioner (and 12 others) with conspiracy to possess with intent to distribute quantities of cocaine and cocaine base, in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One); and charging her with

conspiracy to commit money laundering, in violation of 18 U.S.C. §1956(h), et sec. (Count Two). Also on that date, the government filed an Information pursuant to 21 U.S.C. §841(b), asserting that the amount of cocaine with which the conspiracy dealt was in excess of five kilograms, and the amount of cocaine base with which that group dealt was in excess of 50 grams. After making an initial appearance before the Court and entering "not guilty" pleas, the petitioner's case was placed on the Court's trial calendar.

However, on September 11, 1998, the petitioner appeared before the Court and tendered "straight up" guilty pleas to the subject offenses. On that occasion, this Court conducted its standard Plea & Rule 11 Hearing. During that proceeding, the Court engaged the petitioner in a lengthy colloquy to ensure that her guilty pleas were being intelligently and voluntarily tendered.

In response to the Court's numerous questions, the petitioner swore that she had reviewed the Indictment, and had taken enough time to discuss her case and possible defenses with her attorney; that she understood the charges and penalties which she was facing, particularly as they were explained both in Court and by her counsel; and that she understood that she could plead "not guilty" and proceed to trial on those matters.

Equally critically, the petitioner advised the Court that no one had threatened or coerced her, or otherwise promised her any-

thing in order to induce her guilty pleas; that she was tendering
her pleas because she, in fact, was guilty of the subject offen-
ses; and that she was satisfied with the services of her
attorney.  Thus, after hearing the petitioner's answers to each
of its questions, the Court conditionally accepted the pleas.

Next, on June 30, 1999, the Court conducted a Factual Basis
& Sentencing Hearing in that matter.  At the outset of that pro-
ceeding, the petitioner reiterated her earlier representations,
namely, that she understood the charges and corresponding penal-
ties; that her pleas had been voluntarily and intelligently
tendered; that she believed she had been adequately advised by
her attorney; and that she actually had committed the subject
offenses.  The petitioner, through counsel, also stipulated to
the existence of factual bases to support her pleas and convic-
tions.  Consequently, the Court unconditionally accepted the
petitioner's guilty pleas.

Thereafter, the Court heard remarks from counsel for both
parties.  The petitioner also addressed the Court, apologizing
for her involvement in the offenses and noting that she could not
blame anyone else for her irresponsible decision to commit the
subject crimes.  The petitioner then asked the Court for a
lenient sentence.  Counsel for the government next advised the
Court that, despite the petitioner's attempt to minimize her
involvement during her conversations with agents, the government
had no objection to the imposition of sentences at the low end of

the applicable sentencing ranges.

Next, the Court accepted the Pre-Sentence Report's finding that the petitioner was subject to a two-level enhancement under U.S. Sentencing Guidelines §3B1.1(c) for her managerial role in the subject offenses. Further, the Court accepted the findings that the petitioner's Total Offense Level was 37, her Criminal History Category was IV, and her corresponding range of exposure was 292 to 365 months imprisonment. Consequently, at the con-clusion of the Hearing, the Court sentenced the petitioner to a term of 292 months imprisonment on Count One, and to a concurrent term of 240 months imprisonment on Count Two. The petitioner timely appealed her case to the Fourth Circuit Court of Appeals.

On appeal, the petitioner argued that this Court had erred in imposing the two-level managerial enhancement. <u>See</u> <u>United States v. Mayfield</u>, No. 99-4502, slip op. at 2 (4th Cir. April 24, 2000). However, the Court of Appeals reviewed that claim and concluded that this Court had not plainly erred in the imposition of that enhancement. <u>Id</u>. Accordingly, the petitioner's convic-ions and sentences were affirmed. <u>Id</u>.

Thereafter, on May 15, 2001, the petitioner, through coun-sel, returned to this Court with the instant Motion to Vacate. By this Motion, <u>habeas</u> counsel set forth some 17 claims, which matters can be categorized as: (1)claims that trial and appellate counsel were ineffective in several respects; (2) claims that the petitioner's sentence is erroneous; and (3) claims that the Court

4

violated the petitioner's due process rights in three respects.[1]

On August 1, 2001, the "United States' Response To Petition And Motion To Dismiss" was filed.  By that document, the government contends that all of the petitioner's claims are subject to summary dismissal either for lack of merit, her procedural default of them, or because they are foreclose by relevant legal

---

[1]In particular, habeas counsel contend that: (1) the petitioner's sentence for the drug charge exceeds the statutory maximum which could have been imposed due to the Indictment's failure to list, and the Court's failure to find, the quantity and type beyond a reasonable doubt; (2) her drug sentence is illegal because it exceeds the statutory maximum term set forth by Congress; (3) counsel was ineffective at sentencing for failing to object to the drug type and quantity upon which the petitioner's sentence was calculated; (4) counsel was ineffective on appeal for failing to challenge the Indictment's omission of drug type and quantity; (5) the petitioner was illegally sentenced due to the Court's failure to determine the scope of her criminal activity for each offense, and its failure to make findings concerning the scope of her involvement and the matters which were reasonably foreseeable to her; (6) counsel was ineffective at sentencing for failing to challenge the attribution of 1.5 kilograms or more of crack to the petitioner, and for failing to seek particularized findings from the Court concerning the drug type and quantity with which she dealt, the scope of her agreement, and the amount of funds which were reasonably foreseeable to her; (7) counsel was ineffective on appeal for failing to argue the illegality of the petitioner's sentences due to this Court's alleged failure to determine the scope of the criminal activity which the petitioner agreed to jointly undertake, or the scope of her agreement concerning the acts of her co-conspirators; (8) counsel was ineffective at sentencing for failing to challenge the two-level managerial enhancement; (9) counsel was ineffective on appeal for failing to file a reply brief in opposition to the government's response concerning the two-level enhancement, and for failing to seek a rehearing concerning the appellate Court's decision; (10) counsel was ineffective at sentencing for failing to fully investigate the petitioner's prior convictions so that counsel could have sought a downward departure under U.S.S.G. §5K2.0; (11) the petitioner's money laundering conviction violates her due process rights due to the Court's alleged failure to ensure the existence of a factual basis for that plea; (12) counsel was ineffective for failing to provide the petitioner competent advice concerning the money laundering guilty plea; (13) counsel was ineffective on appeal for failing to challenge the Court's alleged failure to establish a factual basis for the money laundering conviction and to apprize the petitioner of the elements of that offense; (14) the petitioner's guilty pleas violate her due process rights because they were not intelligently made; (15) counsel was ineffective for failing to provide the petitioner competent advice concerning her guilty plea to the drug charge; (16) her guilty plea on the drug charge is invalid because it was not intelligently made pursuant to competent advice from counsel; and (17) appellate counsel was ineffective for having failed to raise trial counsel's ineffectiveness on direct appeal.

5

precedent.

Next, on November 9, 2001, "Petitioner Mayfield's Motion For Summary Judgment" was filed. By that document, the petitioner ultimately asserts that the facts clearly support a finding that counsel was ineffective for failing to object and correct certain errors in her Pre-sentence Report. As a result, the petitioner contends that she was erroneously sentenced on the basis of incorrect information relating to her criminal history, drug quantity, role in the offenses, and on the basis of counsel's failure to seek a downward departure for her. Consequently, the petitioner asserts that she is entitled to summary judgment.

On February 5, 2002, the "United States' Response To Petitioner's Cross-Motion For Summary Judgment" was filed. There, the government first responds to the petitioner's modified argument that trial counsel was ineffective for not challenging the assessment of four criminal history points for two "minor offenses" which the petitioner reportedly had committed before her eighteenth birthday. However, the Court has determined that this modified claim was not raised before July 23, 2001, that is, before the expiration of the petitioner's 1-year limitations deadline imposed under the AEDPA.

Furthermore, such claim is materially different from the next closely related claim—-that trial counsel was ineffective for having failed to seek a down-ward departure on the grounds that the petitioner's criminal history score over-represented the

seriousness of her actual criminal history; therefore, the modified claim cannot be said to relate back to this original claim. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). In that case, the petitioner's modified claim will not be addressed by the Court because it is time-barred.

The government also points to the petitioner's failure to demonstrate or even assert that but for trial counsel's alleged errors, she would have insisted on going to trial as a basis for denying her claims against trial counsel. Moreover, regarding the petitioner's Apprendi-based claims that counsel was somehow ineffective for having failed to challenge her sentences, the government contends that she cannot possibly show prejudice since counsel acted consistently with the law which then existed.

In addition, the government's Response asserts that the petitioner's admitted involvement in the instant conspiracy-- which included her rising through the ranks over several years and increasing her participation from that of a distributor to a "point person" who ran and oversaw operations from her home--is more than adequate to support the Court's findings concerning the drug amount. Thus, the government argues that counsel's stra- tegic decision not to challenge any findings concerning those matters was not ineffective.

Similarly, the government asserts that the petitioner's ad- missions regarding her roles as courier, order taker, and opera- tor of a home-based distribution network was adequate to support

7

the role enhancement which the Court applied.  Moreover, the
Fourth Circuit found that such enhancement was appropriate;
therefore, the government maintains that appellate counsel could
not have been ineffective for not challenging the enhancement.
Last, the government argued that in light of the evidentiary sup-
port for the Court's findings, trial counsel could not possibly
have been ineffective for not seeking a downward departure under
U.S. Sentencing Guidelines §5K2.0.

On March 18, 2002, "Petitioner Mayfield's Reply Brief In
Support Of Petitioner's Cross-Motion For Summary Judgment" was
filed.  By that Brief, counsel for the petitioner took issue
with, <u>inter alia</u>, the government's assertions that the evidence
amply supported the attribution of 1.5 kilograms of crack to the
petitioner; that the Fourth Circuit's conclusion that the Court
did not plainly err in applying the role enhancement's precludes
this Court's review of that question; and that counsel's failure
to seek a departure was not prejudicial.

Now, after having carefully considered all of the foregoing
arguments, along with the relevant legal precedent, the Court
concludes that the petitioner is <u>not</u> entitled to any relief on
her claims.

## II.  **ANALYSIS**

### A.  **The petitioner's claims of an excessive sentence are meritless**.

By their first, second and fourth claims, <u>habeas</u> counsel

argue that the petitioner's sentence on the drug charge exceeds the statutory maximum term for that offense due to the Indictment's failure to set forth the drug quantity, and to this Court's failure to find the type and quantity beyond a reasonable doubt as required by statute; and that the petitioner's trial attorney was ineffective for having failed to raise those matters on direct appeal.

At their core, these allegations seek to invoke the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000). There, the U.S. Supreme Court held that any factor, other than a prior conviction, which increases the statutory maximum term must be alleged in the indictment and proven beyond a reasonable doubt (or, obviously, admitted by the defendant). However, Apprendi was not the law of the land at the time that the petitioner was charged, convicted or sentenced.[2] On the contrary, prior to Apprendi, drug type and quantity were considered sentencing factors which the government was only required to prove by a preponderance of the evidence. See, e.g., United States v. Dor-

---

[2]Initially, habeas counsel did not identify any legal precedent for this argument; however, the government understood such claim to be based upon Apprendi. Thus, after the government's response noted that Apprendi could not be retroactively applied in this case, habeas counsel replied that the claim is based upon Apprendi and Jones v. United States, 526 U.S. 227 (1999)--a case which was decided about three months before the petitioner was sentenced. However, Jones involved construction of carjacking statutes; thus, there was nothing about that decision which suggested either that its reasoning could be applied in the instant case, or that the Apprendi decision was coming. Therefore, the undersigned finds that habeas counsels' belated reliance upon Jones still does not raise a viable claim of error based upon this Court's calculation of the petitioner's sentence.

louis, 107 F.3d 248, 252 (4th Cir. 1997).  Consequently, by these allegations, the petitioner is seeking to have this Court retro-actively apply the holding from Apprendi in this collateral proceeding.

Notwithstanding counsels' suggestions to the contrary, the United States Supreme Court has never ruled that Apprendi or any of its progeny should be retroactive applied in collateral proceedings such as these.  Rather, in Teague v. Lane, 489 U.S. 288 (1989), that high Court noted that there is a presumption against the retroactivity of new rules of criminal procedure.

Moreover, the Fourth Circuit has held that Apprendi cannot be retroactively applied to cases on collateral review.  United States v. Sanders, 247 F.3d 139 (4th Cir.), cert. denied, 534 U.S.1032 (2001).  That is, the Sanders Court reiterated the Supreme Court's assertion that only those rare new rules which "'alter our understanding of the bedrock elements essential to the fairness of a proceeding'" are to be given retroactive appli-cation on collateral review.  Id. at 146.  See also United States v. Fowler, No. 05-6493, slip op. at 1 (W.Va. June 17, 2005) (noting that "neither Booker nor Blakely announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.").

Thus, since the rule announced in Apprendi does not rise to the level of a "watershed rule of criminal procedure that requires retroactive application," the petitioner cannot prevail

10

under <u>Apprendi</u> on these claims.  <u>Id</u>. at 146-51.

### B. **The petitioner's claims of due process violations also are entirely baseless**.

Regarding the petitioner's due process rights, <u>habeas</u> counsel assert that such rights were violated by the Court's failure to ensure the existence of a factual basis for the petitioner's money laundering conviction (claim 11); that due process was violated when the Court accepted the petitioner's guilty pleas without informing her of the elements of the offenses and the maximum penalties which she was facing (claim 14); and that due process was violated when the Court accepted the petitioner's guilty plea on the drug charge without first establishing a factual basis for the scope of her conspiratorial agreement with her co-defendants so as to determine which acts were reasonably foreseeable to the petitioner (claim 16). Unfortunately for the petitioner, however, these claims ignore the law regarding procedural default, and the significance of both the Pre-Sentence Report and the petitioner's sworn statements which she made during her guilty plea Hearing.

As has been noted, on appeal the petitioner alleged only that this Court had erred in subjecting her to a two-level role enhancement. Now, however, the petitioner is seeking to attack her convictions and sentences on the basis of matters which either occurred or, according to her, should have occurred during her trial proceedings.

In United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 120 S.Ct. 1283 (2000), the Fourth Circuit pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Id., citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

In the instant case, other than her baseless assertions of ineffective assistance of counsel, the petitioner has not even attempted to establish cause and prejudice for her failure to raise these claims on direct appeal. In any case, after reviewing the record, the undersigned finds that even if counsel's decision not to raise such matters on appeal could be deemed "cause" for excusing that default, the petitioner cannot establish any prejudice on this record.

Indeed, during her Plea Hearing, the petitioner advised the Court, under oath, that she had discussed the charges with her attorney; that she fully understood those charges and the maximum penalties she was facing; that she had spoken with her attorney

regarding the Guidelines and how they might be applied in her case; and that she and counsel also had discussed any possible defenses she might have had.  Notably, in addition to the fore-going, the petitioner swore that she was pleading guilty to the subject charges because she, in fact, is guilty of all of those matters.

In addition, the prosecutor summarized the charges for the petitioner, and the petitioner told the Court that she understood them.  Furthermore, the petitioner affirmed these representations at the outset of her Sentencing Hearing.

Therefore, in light of the foregoing record evidence, appellate counsel could not possibly have prejudiced the petitioner by foregoing appellate review of these claims.  In the absence of prejudice, then, the petitioner cannot obtain any review or relief on these defaulted claims.

### C.   The petitioner's claims of ineffective assistance of counsel also must be rejected.

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby.  Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen'l.

of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S.
865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th
Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v.
Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S.
1011 (1978).

   To demonstrate prejudice, the petitioner must show a proba-
bility that the alleged errors worked to his "actual and
substantial disadvantage, infecting his trial with error of con-
stitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494
(1986), citing United States v. Frady, 456 U.S. 152, 170 (1982).
Under these circumstances, then, the petitioner "bears the burden
of proving Strickland prejudice." Fields, 956 F.2d at 1297,
citing Hutchins, 724 F.2d at 1430-31.  Therefore, if the peti-
tioner fails to meet this burden, a "reviewing court need not
consider the performance prong." Fields, 956 F.2d at 1290,
citing Strickland, 466 U.S. at 697.

   More critically, a petitioner who alleges ineffective assi-
stance of counsel following the entry of a guilty plea has an
even higher burden to meet.  See Hill v. Lockhart, 474 U.S. at
53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845
F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988).  The
Fourth Circuit described the petitioner's additional burden in a
post-guilty plea claim of ineffective assistance of counsel as
follows:

          When a [petitioner] challenges a conviction

                              14

> entered after a guilty plea, [the] "prejudice
> prong of the [Strickland] test is slightly
> modified.  Such a defendant must show that
> there is a reasonable probability that, but
> for counsel's errors, <u>he would not have
> pleaded guilty and would have insisted on
> going to trial</u>."

<u>Hooper</u>, 845 F.2d at 475 (emphasis added); <u>accord</u> <u>Hill v. Lock-</u>
<u>hart</u>, 474 U.S. at 59; <u>and</u> <u>Fields</u>, 956 F.2d at 1297.

### 1.  **Allegations against trial counsel**.

Here, <u>habeas</u> counsel allege that trial counsel was inef-

ective when: counsel failed to object to the drug quantity and

type which was used to calculate the petitioner's sentence; and

failed to challenge the Court's failure to request particularized

findings to support its calculations (claims three, five and

six).  However, the evidence in this case showed that the

petitioner was a supervisory-level drug conspirator who oversaw

the distribution of large quantities of powder and crack cocaine

for an operation which spanned a three-year period.[3]  The peti-

tioner never reported having held a job from lawful employment

---

[3]<u>Habeas</u> counsel complain that the government cannot rely upon the
petitioner's self-incriminating statements in order to support her sentence
because such information was obtained pursuant to a Non-Attribution Agree-
ment, which she entered in hopes of receiving a sentence reduction under
5K1.1.  However, the Court finds that much of the information upon which the
government relies was divulged by the petitioner in her unsolicited corres-
pondence to the government.  Such correspondence was sent to the government
<u>after</u> the petitioner's proceedings had been concluded and, notably, <u>after</u> the
government had advised the petitioner that it was not interested in her co-
operation because she had been untruthful during its earlier attempts to
debrief her.  Accordingly, the Court finds that even in the absence of the
information which the petitioner provided pursuant to her Non-Attribution
Agreement, the record amply supports her drug sentence.

during the period in question.  Rather, the evidence tended to suggest that the petitioner and her boyfriend used some of the proceeds from her unlawful activities to support her life.

To be sure, during the period in question, the petitioner was the girlfriend of one of the two leaders of the subject drug conspiracy.  Due to her connection with that leader, the petitioner was able to oversee a home and street-based distribution network.  The petitioner personally had responsibility for large quantities of crack cocaine, including the 9 ounces which she had on her person at the time of her arrest, along with the other drugs and weapons which were discovered at her residence.

Similarly, the government has submitted copies of correspondence from the petitioner, including a letter dated June 10, 2000, wherein she admits her substantial involvement with the conspiracy and the scope of her trafficking activities.  By her own account of these matters, the petitioner began dealing drugs with two of her co-defendants (her brother and James Linney) as long ago as 1993; and her bi-weekly shipments consisted of 4 to 13-ounce packages which she cooked into crack in her home.

Consequently, despite the petitioner's belated attempts to down-play the extent of her criminal activities, the evidence forecloses the possibility that she can demonstrate either error or prejudice by counsel's performance in these regards.  See United States v. Stewart, 256 F.3d 231, 249 (4th Cir.), cert. denied, 534 U.S. 1049 (2001) (evidence that a defendant was

engaged in drug trafficking and had illegitimate income which was used in another transaction is sufficient to establish money laundering under the relevant statutes.).

Habeas counsel also claim that trial counsel was ineffective for failing to challenge the managerial enhancement (claim eight).  However, the Fourth Circuit affirmed this Court's imposition of that enhancement based upon its findings that the petitioner was a "point person" for her organization "who took and filled orders for cocaine from several other co-conspirators, including her brother, who would then deliver the drugs to third parties." Mayfield, No. 99-4502, slip op. at 2.  Other than her bare assertions of a lesser involvement, the petitioner has not hinted at any evidentiary support for her objection to this enhancement.  Therefore, the petitioner has failed to demonstrate deficient performance or prejudice on this claim.

Habeas counsel claim that trial counsel was ineffective for failing to investigate the circumstances of the petitioner's prior convictions so that counsel could have pursued a downward departure under U.S. Sentencing Guidelines §5K2.0 (claim ten). In particular, habeas counsel argue that two of the petitioner's prior convictions--for which she was assessed four points--were for minor larceny offenses which caused her criminal history score to significantly over-represent the seriousness of her criminal history.

Although a departure on the grounds that a defendant's

criminal history category overstates the seriousness of his
actual criminal history is well-recognized in the law, such
departures are reserved for the "atypical" or "truly unusual"
case.  Here, the petitioner's criminal history reflects that she
began her downward spiral into criminal behavior at age 17, when
she committed, on separate occasions, the offenses of larceny and
theft by unlawful concealment.  Thereafter, the petitioner
apparently plunged downward to stealing from the government, as
evidenced by her welfare fraud conviction.  Ultimately, the
petitioner fell to the level of selling drugs and supervising
other criminals as reflected in the instant offenses.

Simultaneous with the foregoing activities, the petitioner
also picked up additional convictions for her repeated refusal to
obey various driving-related laws, and she picked up additional
charges for offenses such as simple assault, larceny and other
driving-related offenses.  Although no criminal history points
were assessed for the additional convictions, the existence of
those matters on the petitioner's record renders this case less
than "atypical," thereby making it highly unlikely that this
Court would have granted a downward departure under §5K2.0 had
one been sought.  Once again, therefore, the petitioner cannot
demonstrate any prejudice in connection with this claim.

Last with regard to trial counsel, habeas counsel also claim
ineffectiveness for an alleged failure to provide the petitioner
with competent advice concerning the two offenses, and to inves-

tigate the facts surrounding those charges (claims 12 and 15).
However, such conclusory assertions fly in the face of the record
evidence and the petitioner's own sworn representations concern-
ing those matters.

That is, despite these allegations, <u>habeas</u> counsel do not
even bother to identify what additional matters they believe the
petitioner should have been told.  Nor do <u>habeas</u> counsel hint at
the possibility that the petitioner would have pled not guilty
and proceeded to trial had she been given any additional infor-
mation from trial counsel.  Furthermore, <u>habeas</u> counsel cannot
overcome the obstacle created by the petitioner's sworn
representations that she is guilty of the subject offenses.

Most critically, it is well settled that a valid guilty plea
"constitutes a waiver of all non-jurisdictional defects which
reportedly occurred <u>prior</u> to the entry of such plea."  <u>United
States v. Willis</u>, 992 F.2d 489, 490 (4th Cir. 1993) (emphasis
added).  To put it simply, a defendant who pleads guilty may not
challenge non-jurisdictional errors, including deprivation of
constitutional rights that occurred prior to the entry of that
plea.  <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973); <u>Hall v.
McKenzie</u>, 575 F.2d 481 (4th Cir. 1978).  Therefore, these claims
also must fail.

  **2. <u>Claims against appellate counsel</u>**.

<u>Habeas</u> counsel contend that appellate counsel also was

ineffective in numerous regards.  For instance, <u>habeas</u> counsel
allege that appellate counsel was ineffective for having failed
to argue that the petitioner was illegally sentenced due to the
Court's alleged failure to determine the scope of the peti-
tioner's criminal activity, and for his failure to challenge the
Court's alleged failure to establish a factual basis for the
money laundering plea, and its failure to apprise the petitioner
of the elements of that offense (claims seven and thirteen).
However, for the reasons previously stated in connection with its
analysis of the claims underlying these allegations against
counsel, the Court finds that such allegations are baseless.

Specifically, after swearing that she was apprized of the
elements of the subject offenses, the petitioner admitted her
guilt and conceded the existence of factual bases to support her
convictions on those charges.  Moreover, the record sets forth
more than adequate evidence for the Court to have determined the
scope of the petitioner's involvement with the subject offenses.
Therefore, these claims must be flatly rejected.

<u>Habeas</u> counsel also contend that appellate counsel was
ineffective for having failed to rejoin the government's response
to his challenge of the petitioner's role enhancement, and for
having failed to seek rehearing <u>en banc</u> for that argument (claim
9).  However, in light of <u>habeas</u> counsels' failure to demonstrate
that the subject enhancement, in fact, was erroneous, they cannot
show that the petitioner was prejudiced by appellate counsel's

conduct concerning that claim.

Finally, <u>habeas</u> counsel claim that appellate counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness on direct appeal (claim seventeen).  However, inasmuch as the Fourth Circuit consistently adheres to its policy not to review claims against trial counsel on direct appeal unless the alleged ineffectiveness is apparent on the record--and no such ineffectiveness has been revealed--the petitioner was not prejudiced by appellate counsel's decision on this matter.

### III.  <u>CONCLUSION</u>

The instant record reflects that the petitioner cannot prevail on any of her claims for numerous reasons, including her procedural default of some of them and her failure to demonstrate an entitlement to relief as to others.  In any case, then, the petitioner's Motion for Summary Judgment must be <u>denied</u>; the government's <u>de facto</u> motion for summary judgment must be <u>granted</u>; and the petitioner's Motion to Vacate must be <u>denied</u> and <u>dismissed</u>.

### IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  That the petitioner's Motion for Summary Judgment is **DENIED;**

2.  That the government's <u>de facto</u> motion for summary judgment is **GRANTED;** and

3.   That the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

**Signed: December 15, 2005**

Richard L. Voorhees
United States District Judge